CASE NO. 16-5164

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA                PLAINTIFF-APPELLEE

V.

BRET A. DUNNING                  DEFENDANT-APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

---

BRIEF OF THE PLAINTIFF-APPELLEE
UNITED STATES OF AMERICA

---

KERRY B. HARVEY
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
APPELLATE CHIEF

BY:    DANIEL E. HANCOCK
ASSISTANT UNITED STATES ATTORNEY
260 W. VINE STREET, SUITE 300
LEXINGTON, KENTUCKY 40507-1612
(859) 685-4829
Daniel.Hancock@usdoj.gov

COUNSEL FOR PLAINTIFF-APPELLEE

# TABLE OF CONTENTS

Table of Authorities ...................................................................................... ii

Statement Regarding Oral Argument .................................................... viii

Statement of the Issues................................................................................1

Statement of the Case..................................................................................1

Summary of the Argument..........................................................................4

Argument

      I.      The district court properly denied Dunning's motion to suppress........5

      II.     Section 2252 is not unconstitutionally vague in providing a minimum sentence for receipt, but not for possession, of child pornography..........................................................................................18

      III.    Dunning's sentence is reasonable ....................................................21

Conclusion ..................................................................................................30

Certificate of Service

Designation of District Court Documents

# TABLE OF AUTHORITIES

## I.  Cases

*Bond v. United States*,
  529 U.S. 334 (2000) ...............................................................................14

*Coates v. City of Cincinnati*,
  402 U.S. 611 (1971) ...............................................................................18

*Dalia v. United States*,
  441 U.S. 238 (1979) .................................................................................5

*Florida v. Harris*,
  133 S. Ct. 1050 (2013) ....................................................................12, 13

*Gall v. United States*,
  552 U.S. 38 (2007) ............................................................................ 21-22

*Gardenhire v. Schubert*,
  205 F.3d 303 (6th Cir. 2000) ...............................................................20

*Guest v. Leis*,
  255 F.3d 325 (6th Cir. 2001) .........................................................14, 17

*Illinois v. Gates*,
  462 U.S. 213 (1983) .................................................................................6

*Kimbrough v. United States*,
  552 U.S. 85 (2007) .................................................................................21

*Kyllo v. United States*,
  533 U.S. 27 (2001) ........................................................................... 16-17

*Pepper v. United States*,
  562 U.S. 476 (2011) ........................................................................ 27-28

*Posters 'N' Things, Ltd. v. United States*,
  511 U.S. 513 (1994) ...............................................................................18

*Rita v. United States*,
    551 U.S. 338 (2007) .................................................................22

*Soltis v. J.C. Penny Corp.*,
    635 F. App'x 245 (6th Cir. 2015) .......................................11

*United States v. Abbring*,
    788 F.3d 565 (6th Cir. 2015) ................................ 15, 24-26

*United States v. Batchelder*,
    442 U.S. 114 (1979) ...............................................................20

*United States v. Booker*,
    543 U.S. 220 (2005) ...............................................................21

*United States v. Bradley*,
    488 F. App'x 99 (6th Cir. 2012) .............................................2

*United States v. Brown*,
    732 F.3d 569 (6th Cir. 2013) ..................................................6

*United States v. Carter*,
    510 F.3d 593 (6th Cir. 2007) ...............................................21

*United States v. Castilla-Lugo*,
    699 F.3d 454 (6th Cir. 2012) .........................................22, 23

*United States v. Chiaradio*,
    684 F.3d 265 (1st Cir. 2012) ...................................................7

*United States v. Conatser*,
    514 F.3d 508 (6th Cir. 2008) ...............................................22

*United States v. Conner*,
    521 F. App'x 493 (6th Cir. 2013) ...........................15, 17, 25

*United States v. Cunningham*,
    669 F.3d 723 (6th Cir. 2012) .........................................23, 28

iii

*United States v. Dudeck*,
   657 F.3d 424 (6th Cir. 2011) ...............................................................20

*United States v. Fowler*,
   535 F.3d 408 (6th Cir. 2008) .................................................................7

*United States v. Haj-Hamed*,
   549 F.3d 1020 (6th Cir. 2008) ...................................................... 22-23

*United States v. Hentzen*,
   No. 14-6153, 2015 WL 4880150, at *9 (6th Cir. Aug, 7, 2015) ...................25, 27

*United States v. Hilton*,
   625 F. App'x 754 (6th Cir. 2015) ......................................................11

*United States v. Jamerson*,
   536 F. App'x 606 (6th Cir. 2013) ................................................. 18-20

*United States v. King*,
   227 F.3d 732 (6th Cir. 2000) ............................................................ 5-6

*United States v. Klups*,
   514 F.3d 532 (6th Cir. 2008) ............................................................22

*United States v. Leon*,
   468 U.S. 897 (1984) ..........................................................................13

*United States v. Navarro-Diaz*,
   420 F.3d 581 (6th Cir. 2005) ........................................................... 5-6

*United States v. Ocasio*,
   No. EP-11-CR-2728-KC, 2013 WL 2458617 (W.D. Tex. June 6, 2013) ...........13

*United States v. Richardson*,
   437 F.3d 550 (6th Cir. 2006) ............................................................21

*United States v. Ross*,
   703 F.3d 856 (6th Cir. 2012) ............................................................27

iv

*United States v. Schumacher*,
  611 F. App'x 337 (6th Cir. 2015) .................................................6-7, 11-12, 14

*United States v. Search of Music City Mktg., Inc.*,
  212 F.3d 920 (6th Cir. 2000) ............................................................................18

*United States v. Smith*,
  516 F.3d 473 (6th Cir. 2008) ............................................................................29

*United States v. Terry*,
  522 F.3d 645 (6th Cir. 2008) ..............................................................................6

*United States v. Thomas*,
  788 F.3d 345 (2nd Cir. 2015)..................................................................... 12-13

*United States v. Tristan-Madrigal*,
  601 F.3d 629 (6th Cir. 2010) .....................................................................23, 29

*United States v. Tucker*,
  404 U.S. 443 (1972)..........................................................................................28

*United States v. Vonner*,
  516 F.3d 382 (6th Cir. 2008) ............................................................................23

*United States v. Vowell*,
  516 F.3d 503 (6th Cir. 2008) ............................................................................21

*United States v. Watson*,
  498 F.3d 429 (6th Cir. 2007) ............................................................................13

*United States v. Williams*,
  436 F.3d 706 (6th Cir. 2006) ............................................................................23

*United States v. Wilms*,
  495 F.3d 277 (6th Cir. 2007) ............................................................................22

*United States v. Woodard*,
  638 F.3d 506 (6th Cir. 2011) ............................................................................23

*United States v. Woods*,
  730 F. Supp. 2d 1354 (S.D. Ga. 2010)....................................................20

*United States ex rel. Atty. Gen. v. Del. & Hudson Co.*,
  213 U.S. 366 (1909)..........................................................................18

## II. Amendments, Statutes & Guidelines

U.S. Const. amend. IV .........................................................................5

18 U.S.C. § 2252...................................................................1, 4, 18, 19

18 U.S.C. § 2252(a)(2)...........................................................................3

18 U.S.C. § 3551.................................................................................21

18 U.S.C. § 3553.............................................................................21, 28

18 U.S.C. § 3553(a) ....................................................................... 21-23, 29

18 U.S.C. § 3553(a)(2)..........................................................................22

18 U.S.C. § 3661...............................................................................27

U.S. Sentencing Guidelines Manual § 1B1.4 ..............................................27

U.S. Sentencing Guidelines Manual § 2G2.2(b)(1)..........................................25

U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F)...................................23, 24

U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.1 ....................................24

U.S. Sentencing Guidelines Manual § 6A1.3(a)..............................................27

## III.  Other Authorities

Michael L. Bourke & Andres E. Hernandez,  *The "Butner Study" Redux:*
*A Report of the Incidence of Hands-on Child Victimization by Child*
*Pornography Offenders,* 24 J. Fam. Violence 183 (2009) .............................28, 29

Stephen Hoffman, *An Illustration of Hashing and its Effect on Illegal File*
*Content in the Digital Age*, 22 No. 4 Intell. Prop. & Tech. L.J. 6 (2010) ..............2

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument.

## STATEMENT OF THE ISSUES

I.      Whether the district court properly denied Dunning's motion to suppress evidence that the police seized from his home.

II.      Whether 18 U.S.C. § 2252 is unconstitutionally vague because it provides a mandatory minimum sentence for receipt of child pornography, but not for possession of child pornography.

III.      Whether Dunning's sentence is procedurally and substantively reasonable.

## STATEMENT OF THE CASE

On April 3, 2013, Kentucky State Police Detective Jason Merlo used Nordic Mule, a program that is part of a law enforcement software package known as the Child Protection System (CPS), to search for IP addresses that had recently shared child pornography on the peer-to-peer file sharing network eDonkey.  [R. 64:  Plea Agreement at 385 (¶ 3(a), (b)).]  When the software finds shared materials, it logs the "date, time, hash values, filename, and IP address."  [R. 25:  Motion at 79.]  The software returned the IP address 74.214.188.249 as one of the most recent addresses sharing such material.  [R. 70:  Presentence Report at 404 (¶ 11).]  Detective Merlo determined that the files being shared were child pornography by

cross-referencing the hash values[1] of the files against the CPS database, which

contains files compiled from previous child pornography investigations. [R. 46:

Opinion and Order at 270; *see* R. 70: Presentence Report at 404 (¶¶ 11-12).] The

IP address belonged to Dunning at his residence. [R. 70: Presentence Report at

404 (¶ 14).] On April 29, 2013, Detective Merlo again queried the same IP

address, now identified as Dunning's, using CPS. [*Id*. at 405 (¶ 16).] That query

revealed that Dunning's IP was sharing 176 "notable" files, meaning files

consistent with known child pornographic material, and Detective Merlo obtained

a search warrant for Dunning's residence based on this information. [*Id*. (¶¶ 16-

17).]

    During the execution of the search warrant, the police seized numerous

electronic devices, including computers, iPhones, and iPads, which revealed over

22,000 images and videos containing material involving the sexual exploitation of

minors. [R. 64: Plea Agreement at 385 (¶ 3); *see* R. 70: Presentence Report at

---

[1] A hash value is often described as a "digital fingerprint." *See, e.g.*, *United States v. Bradley*, 488 F. App'x 99, 101 (6th Cir. 2012). "Hashing is the process of taking [a file] as a string of information, processing this string through a specially designed mathematical function that transposes each character of the string into another character or symbol, and converts it to another (usually smaller) string known as the hash value." Stephen Hoffman, *An Illustration of Hashing and its Effect on Illegal File Content in the Digital Age*, 22 No. 4 Intell. Prop. & Tech. L.J. 6, at *6 (2010). "[H]ashing algorithms . . . are unbelievably sensitive to the input data. Even one minor change, such as adding a space or a punctuation mark to a word processing document, completely alters the hash value." *Id*. at *7.

405-06 (¶¶ 18, 20).] Some images showed prepubescent children engaged in sexually explicit conduct with adults. [R. 64: Plea Agreement at 385 (¶ 3(c)); *see* R. 70: Presentence Report at 405 (¶ 19).] The images appeared to be "actual minor children; furthermore, one or more images . . . were of actual minors previously identified by law enforcement agents, according to the forensic report from the National Center for Missing and Exploited Children (NCMEC)." [R. 64: Plea Agreement at 385 (¶ 3(c)).]

Dunning was indicted for knowingly receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). [R. 1: Indictment at 1.] Prior to trial, he moved to suppress evidence that the police seized from his home, arguing that the warrant application was not supported by probable cause and that he had a reasonable expectation of privacy in the files stored on his computer. [R. 25: Motion at 64.] The district court denied Dunning's motion and request for an evidentiary hearing. [R. 46: Opinion and Order at 273-77.]

Dunning entered into a conditional plea agreement, reserving the right to appeal the district court's denial of his suppression motion. [R. 64: Plea Agreement at 384.] He pleaded guilty to Count 1 of the indictment, and the district court sentenced him to imprisonment for 165 months. [R. 55: Minute Entry at 307; R. 68: Judgment at 394; R. 73: Court, TR (Sentencing) at 565-67.] This appeal followed. [R. 69: Notice of Appeal at 400.]

3

# SUMMARY OF THE ARGUMENT

I.    Detective Merlo's affidavit provided probable cause for the issuance of a search warrant for Dunning's home.  In establishing a fair probability that child pornography would be located there, Detective Merlo was not required to prove the scientific accuracy of the software he used to detect Dunning's illicit sharing of child pornography.  Furthermore, because Dunning shared those files with the public by using peer-to-peer file sharing software, he had no reasonable expectation of privacy in those files.  Detective Merlo's observation of the files associated with Dunning's IP address using CPS was therefore not an unconstitutional search.

II.    18 U.S.C. § 2252 provided Dunning with fair notice of what activities are prohibited and the penalties associated with those illicit acts.  The government's decision to charge a defendant with receipt of child pornography, which carries a five-year minimum sentence, as opposed to the lesser-included offense of possession, which carries no minimum, is an acceptable exercise of prosecutorial discretion.

III.    Dunning's sentence was reasonable.  By using a peer-to-peer file sharing network to download child pornography files, Dunning necessarily shared the files while he downloaded them, even if he took steps to cover his tracks.  In calculating his guideline range, the court properly applied the two-level

4

enhancement for distribution of child pornography. Because that enhancement applies, the two-level reduction for mere receipt or solicitation of such materials cannot. Furthermore, Dunning's attempt to create an issue of reversible error out of the district court's citation of a study about the victimization of children by child pornography offenders during sentencing is unsuccessful, because that was but one of the myriad factors the district court considered in determining Dunning's within-guidelines sentence.

## ARGUMENT

### I.    The district court properly denied Dunning's motion to suppress.

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *Dalia v. United States*, 441 U.S. 238, 255 (1979); *see* U.S. Const. amend. IV. A defendant may challenge a search warrant and underlying affidavit by filing a motion to suppress. *See United States v. King*, 227 F.3d 732, 736 (6th Cir. 2000).

"In reviewing a ruling on a motion to suppress, [this Court] will uphold a district court's factual findings unless they are clearly erroneous, but will conduct a de novo review of a district court's legal determinations." *United States v. Navarro-Diaz*, 420 F.3d 581, 584 (6th Cir. 2005). But, as here, "[w]hen reviewing

5

the denial of a motion to suppress evidence, the appellate court must consider the evidence in the light most favorable to the government." *Id.* (internal quotation marks omitted). And, in reviewing whether the search warrant was supported by probable cause, the Court should consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983). In doing so, the Court should give "great deference" to the issuing judge's probable cause determination. *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013).

> A. *The search warrant issued for Dunning's residence was supported by probable cause.*

Probable cause is "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *King*, 227 F.3d at 739. In determining whether probable cause exists for the issuance of a search warrant, the issuing judge must consider "whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular case." *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *Gates*, 462 U.S. at 238). When a defendant charges that information was omitted from an affidavit submitted with an application for a search warrant, the defendant must show that the supposed information "was actually material to a finding of probable cause." *United States v. Schumacher*, 611 F. App'x 337, 340 (6th Cir. 2015).

6

In establishing a fair probability that a person suspected of downloading or distributing child pornography on the internet has such files on his computer, law enforcement must use and rely on software that can detect when a person publicly shares such files. *See id*. Probable cause does not require law enforcement to provide source code or to prove the scientific accuracy or reliability of that software, "because probable cause does not require scientific certainty." *Id*. (quoting *United States v. Chiarado*, 684 F.3d 265, 278-79 (1st Cir. 2012)). A defendant who challenges the factual assertions in an affidavit supporting a search warrant is entitled to an evidentiary hearing only if he makes "a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth in omitting information from the affidavit" and "a finding of probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).

Detective Merlo submitted an affidavit to a state circuit judge in Floyd County, Kentucky, in support of his application for a warrant to search Dunning's home on April 29, 2013. [R. 25: Motion at 77-83.] In that affidavit, Detective Merlo described his Internet Crimes Against Children (ICAC) training and his experience in using software to investigate child pornography crimes. [*Id*. at 79.] He described how he "used law enforcement systems to query IP addresses in

7

Kentucky that had been seen sharing child sexual exploitation files over the internet." [*Id.*]

Detective Merlo also detailed how, on April 3, 2013, he logged into the law enforcement database and learned that an IP address near Harold, Kentucky, had been logged as sharing "files indicative of child sexual exploitation." [*Id*. at 80.] Using the logged files' hash values, he matched the files shared by that IP address with files contained in the CPS database. [*Id*.] He provided examples in the affidavit of the matched files, with their names, hash values, and descriptions of their exploitative content. [*Id.*] Detective Merlo then subpoenaed Gearheart Communications and learned that the IP address belonged to Dunning at a physical address on Leatherwood Lane in Dana, Kentucky. [*Id*. at 80-81.] He verified that address as Dunning's through personal observation. [*Id*. at 81.] On April 29, 2013, immediately prior to filing the affidavit, Detective Merlo again queried Dunning's IP address and observed that it was showing 176 "notable" files. [*Id*.]

Based on this information, which was in Detective Merlo's affidavit, the judge issued the requested warrant. [*Id*. at 74-75.] Detective Merlo and other officers executed the warrant on April 30, 2013, and seized computers, hard drives, and other digital devices. [*Id*. at 76.]

After being indicted in federal court, Dunning filed a motion to suppress the evidence seized under the warrant, claiming that the search warrant was issued

without probable cause.  [*Id*. at 64.]  Specifically, Dunning claimed that Detective Merlo's affidavit contained "wholly conclusory" statements as to the method he used to detect Dunning's IP address, and that Detective Merlo "did not perform any independent investigation," but merely relied on hash values to identify suspected files.  [*Id*. at 71.]  Further, in responding to the Magistrate Judge's report and recommendation, Dunning also argued that the affidavit was insufficient because it did not name the law enforcement database used, and he asserted that Detective Merlo did not use the database properly.  [R. 45:  Objections at 265-67.] Dunning also sought discovery related to the name and supporting documentation for the program Detective Merlo used, a request the district court twice denied because the United States had already provided the information to Dunning. [R. 21:  Request at 51; R. 27:  Motion at 178; R. 26:  Order at 176-77; R. 41: Order at 253-54.]

The district court rejected Dunning's arguments.  The court held that the facts set forth in the affidavit "presented the issuing judge with sufficient proof for issuance of a search warrant."  [R. 46:  Opinion and Order at 274.]  The court determined that Detective Merlo had confirmed that the suspect files were shared by Dunning's IP address on multiple dates.  [*Id*.]  The court also validated Detective Merlo's use of hash values to authenticate the suspect files, noting their high degree of reliability.  [*Id*. at 274-75.]  Finally, the district court rejected

9

Dunning's assertions that Detective Merlo's failure to include information about the exact program used in the affidavit constituted a false statement or omission, and the court, noting that Dunning failed to make even a preliminary showing of dishonesty on Detective Merlo's part, denied Dunning's request for an evidentiary hearing. [R. 40: Report and Recommendation at 248; R. 46: Opinion and Order at 276.]

The district court correctly found that probable cause supported the warrant affidavit, and that Dunning was not entitled to an evidentiary hearing on his motion to suppress. Detective Merlo was trained to use and had previously used software to investigate child pornography crimes, and he identified and confirmed that the files containing child pornography had been shared by Dunning's IP address on multiple dates. Moreover, Dunning failed to make even a preliminary showing that Detective Merlo had been dishonest. [*See* R. 46: Opinion and Order at 274-76.]

For the first time, Dunning, under the guise of labeling the statements in the affidavit as "wholly conclusory," a phrase he used repeatedly in district court pleadings, claims that the Nordic Mule software cannot provide probable cause because it "cannot be authenticated or calibrated" without access to its source code. Dunning's Brief at 7-12. Dunning did not make this argument, specifically addressing the inability to authenticate the software's source code and how that

might affect the reliability of the facts in the affidavit, before the district court. The only reference to such an argument is in the most oblique sense, as Dunning claimed in his motion for reconsideration of his request for discovery that he needed information about the program to determine its reliability. [R. 27: Motion at 178.] Accordingly, Dunning waived this argument. *See United States v. Hilton*, 625 F. App'x 754, 759 (6th Cir. 2015); *Soltis v. J.C. Penny Corp.*, 635 F. App'x 245, 248 (6th Cir. 2015) (holding that arguments not raised before district court are waived on appeal).

Nevertheless, this Court has previously seen and rejected the argument Dunning sets out here. In *Schumacher*, law enforcement used investigative software to identify the defendant's IP address as one downloading and sharing child pornography through a peer-to-peer network. 611 F. App'x at 340. The defendant argued that the veracity of the affidavit supporting the search warrant was in doubt because the affidavit did not name the software, describe exactly how it works, or cite statistics or reports on its reliability or accuracy. *Id*. In short, the defendant argued, as here, that without such information, the affidavit was "wholly conclusory." *See* Dunning's Brief at 8. By his argument, Dunning seeks to heighten the burden required before a search warrant can be issued, from demonstrating a fair probability that contraband will be found at the location to be searched to demonstrating the same to a scientific certainty. But this Court joined

11

the First Circuit in flatly rejecting this argument. *Schumacher*, 611 F. App'x at 340. The information Dunning claims is missing from the affidavit would not have reduced the likelihood that child pornography would be found at Dunning's home. *Id*. The information, if included, "would have only strengthened the affidavit by showing that the software was reliable. *Id*.

Dunning's claims that the failure to grant him an evidentiary hearing was an error, Dunning's Brief at 11, are not persuasive. As *Schumacher* effectively held, information on the scientific reliability of the software used by law enforcement is immaterial to a finding of probable cause. 611 F. App'x at 340. The omission of this information is not grounds for an evidentiary hearing. *Id*. at 341-42**.**

Dunning's attempts to analogize the software used to find his IP to the drug-sniffing dog in *Florida v. Harris*, 133 S. Ct. 1050 (2013), arguing that the officer's training is at issue in both circumstances, Dunning's Brief at 11, also fails. As the Second Circuit found when faced with an identical argument, a dog's training, ability to follow that training, and its handler's ability to handle the dog and interpret its signals are all subject to error that may not be discernable to law enforcement. *United States v. Thomas*, 788 F.3d 345, 352 (2nd Cir. 2015). On the other hand, the CPS software used by Detective Merlo, the same program used in *Thomas*, merely packages tools to search peer-to-peer networks, automating a task law enforcement could do in real time using publicly-available tools, with tools to

12

identify known child pornography. *Id*. at 352-53. The software is not subject to the same sort of animal and human errors of intuition and training that were addressed in *Harris*. *Id*.

Dunning's reliance on *United States v. Ocasio*, No. EP-11-CR-2728-KC, 2013 WL 2458617 (W.D. Tex. June 6, 2013), Dunning's Brief at 11, is misplaced. The *Ocasio* court was not evaluating the reliability of the statements in a warrant affidavit, but viewed the question of whether such material was discoverable as a question of governmental privilege, not one touching on the validity of a probable cause determination. *Id*. at *5. Dunning cannot use this case to contradict established Sixth Circuit precedent permitting such software to be used in establishing probable cause.

Regardless, the police's good faith excuses any technical deficiencies in the search warrant or affidavit. Where an officer relies in good faith upon the validity of a search warrant duly issued, the good faith exception prevents suppression of the resulting search's fruits. *United States v. Leon*, 468 U.S. 897, 920-21 (1984). Exclusion "is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *United States v. Watson*, 498 F.3d 429, 431 (6th Cir. 2007). Here, as the district court found, Detective Merlo acted on data validly gathered using the CPS software, and he included such information in the affidavit as was actually necessary to establish probable cause. [R. 46: Opinion and Order

13

at 275-76.]  No requirement existed in April 2013 that an affidavit had to validate law enforcement software's source code to establish its reliability to a scientific certainty.  Indeed, *Schumacher* concretely refuted such an argument two months after the warrant in this case was issued.  611 F. App'x at 340.  Thus, both Detective Merlo and the issuing magistrate acted properly and in good faith, and the exception would apply if the affidavit were deemed to have been technically deficient.

> **B.**  *Dunning had no reasonable expectation of privacy in files law enforcement observed him sharing on a peer-to-peer file sharing network.*

The Fourth Amendment protects individuals from warrantless searches of those computer files that have a reasonable and legitimate expectation of privacy. *See Guest v. Leis*, 255 F.3d 325, 333 (6th Cir. 2001).  Files kept private may be protected, but files "intended for publication or public posting" are not.  *Id*.  To determine whether such an expectation of privacy as to a particular file is legitimate, a court must determine first whether the individual "has exhibited an actual expectation of privacy; that is, whether he has shown that 'he sought to preserve something as private.'"  *Bond v. United States*, 529 U.S. 334, 338 (2000) (alterations omitted).  Second, the court must determine whether the expectation of privacy is "one that society is prepared to recognize as reasonable."  *Id*.

14

The function of peer-to-peer file sharing software is to allow users to download files—or portions of files—from other users, while their own files—or portions of those files—are made available to other users of the network. *See United States v. Abbring*, 788 F.3d 565, 567 (6th Cir. 2015). "Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the Fourth Amendment." *United States v. Conner*, 521 F. App'x 493, 497 (6th Cir. 2013). "[T]here is no reasonable expectation of privacy in files the government obtained using peer-to-peer sharing services." *Id*. at 498.

Dunning used a peer-to-peer file sharing network to download child pornography. [R. 64: Plea Agreement at 385 (¶ 3(a)); R. 25: Motion at 80.] While he was downloading files, his IP address and shared folders, which contained the files he was currently downloading, were made available to anyone using the network, including law enforcement. [R. 73: Joey Zwalen, TR (Sentencing) at 462-64.] Detective Merlo averred that the software he used "read[s] the publicly available information from computers that are identified as offering to share child sexual exploitation files." [R. 25: Motion at 79.] Specifically with regard to locating Dunning's IP address, Detective Merlo "queried IP addresses in Kentucky that were sharing child sexual exploitation files over the internet in a popular P2P sharing network." [*Id*. at 80.]

15

Dunning did not argue below, as he does here, that Detective Merlo's viewing the files available for sharing from Dunning's IP was an unconstitutional search. Instead, he made a factually-incorrect claim that "without access to the software that law enforcement have, the files that are viewed cannot be discerned from any other file not containing child pornography (CP); nor could the identification of any IP address be ascertained without the same." [R. 33: Reply at 208.] The government, however, pointed out that by using peer-to-peer file sharing software, Dunning himself made his files available to the public. [R. 37: Supplement at 230-31.] The district court implicitly agreed and determined that Dunning's argument as to whether the law enforcement database was available to the public was irrelevant because Dunning lacked a reasonable expectation of privacy in files publicly shared. [R. 46: Opinion and Order at 271.]

As Dunning had no reasonable expectation of privacy in files he shared on a public, peer-to-peer network, his Fourth Amendment challenge must fail. Simply, Dunning's arguments as to the availability of the Nordic Mule software to the public are, as the district court found, irrelevant in light of his actions.

Dunning's reliance on *Kyllo v. United States*, 533 U.S. 27 (2001), Dunning's Brief at 25-26, is also misplaced. In *Kyllo*, law enforcement used a thermal-imaging device to determine that a house contained contraband. The *Kyllo* search was unconstitutional because law enforcement had used sense-enhancing

16

technology to gather information from the interior of the home that could not have otherwise been obtained without physical intrusion. *Id*. at 41. Here, in contrast, no physical intrusion was necessary to view files placed on public display. *Guest*, 255 F.3d at 333.

Dunning's argument that his files were not publicly available because he moved his files out of shared directories, Dunning's Brief at 26-28, misses the point. The Nordic Mule software identified only those files that Dunning had made available for sharing on the eDonkey network. [R. 25: Motion at 80.] Even though Dunning attempted to cover his tracks by moving those files out of shared directories when they finished downloading, those files or parts of them were being shared with others while his downloads were in progress. [R. 73: Joey Zwalen, TR (Sentencing) at 462-64.] Whether a file was ever fully downloaded by another user is immaterial. Regardless of what Dunning did to make those files private after he downloaded them, they were publicly shared for a certain amount of time. Indeed, that is how they were detected by Nordic Mule. *See Conner*, 521 F. App'x at 495, 497; *Abbring*, 788 F.3d at 566.

17

**II.    Section 2252 is not unconstitutionally vague in providing a minimum sentence for receipt, but not for possession, of child pornography.**

A duly enacted statute is presumed to be constitutional. *United States v. Jamerson*, 536 F. App'x 606, 608 (6th Cir. 2013) (citing *United States ex rel. Atty. Gen. v. Del. & Hudson Co.*, 213 U.S. 366, 407-08 (1909)). A statute is unconstitutionally vague in application if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *United States v. Search of Music City Mktg., Inc.*, 212 F.3d 920, 924-25 (6th Cir. 2000) (quoting *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 526 (1994)). A statute is deemed unconstitutionally vague "not because 'it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Jamerson*, 536 F. App'x at 608 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).

The government charged Dunning with two counts of receipt of child pornography as to images he downloaded on March 9 and April 14, 2013, and with one count of possession as to those images he possessed on April 30, 2013. [R. 1: Indictment at 1-2.] Dunning entered into a plea agreement in which he agreed to plead guilty to one receipt count, while the United States agreed to dismiss the

18

possession count and one receipt count.  [R. 64:  Plea Agreement at 384 (¶ 1).]  For

sentencing purposes, Dunning argued that the "illogical distinction" between the

five-year mandatory minimum sentence for receipt of child pornography and the

lack of a minimum sentence for possession of the same "could be the basis for

a [downward] variance."  [R. 60:  Sentencing Memorandum at 371.]  The district

court considered and rejected that argument during the sentencing hearing.  [R. 73:

Colloquy, TR (Sentencing) at 530, 563.]  On appeal, Dunning elevates that

argument to a constitutional challenge, asserting that 18 U.S.C. § 2252 is

unconstitutionally vague because its provision of a mandatory minimum sentence

for receipt, but not for possession, invites arbitrary enforcement.  Dunning's Brief

at 12-16.

   Dunning again argues against settled law.  The government's decision to

charge Dunning with receipt as to child pornography images he downloaded on

March 9 and April 14, 2013, and to charge him with only mere possession of the

child pornography images he possessed on April 30, 2013, is not arbitrary, but is

instead an acceptable exercise of prosecutorial discretion.  Section 2252 provided

Dunning with fair notice of what acts are prohibited, and made him aware of the

penalties associated with those illicit acts.

   In *Jamerson*, this Court recounted that the crime of "knowingly possessing"

child pornography was added by the 1990 amendments to 18 U.S.C. § 2252 as

19

a gap filler, "relieving the government from having to prove receipt of child pornography." 536 F. App'x at 608-09. The Court also noted that while possession is a lesser-included offense of receipt of child pornography, "conviction under both statutes is permissible if separate conduct is found to underlie the two offenses." *Id*. at 609 (quoting *United States v. Dudeck*, 657 F.3d 424, 430 (6th Cir. 2011)). Though an offender may not know whether his downloading of child pornography would result in a charge of receipt or a charge of possession, the statute provides adequate notice because that offender would know that, either way, his conduct was unlawful. *Id.*

"Even when two statutes with 'identical elements' prohibit the same criminal conduct but provide different penalties, the government may prosecute under either statute 'so long as it does not discriminate against any class of defendants.'" *Id*. (quoting *United States v. Batchelder*, 442 U.S. 114, 124-25 (1979)). A prosecutor's broad discretion in making charging decisions is well-recognized. *See Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000). The government's election to charge a defendant with the offense carrying the higher penalty is neither arbitrary nor discriminatory. *Jamerson*, 536 F. App'x at 609; *see also United States v. Woods*, 730 F. Supp. 2d 1354, 1365-66 (S.D. Ga. 2010) (noting that courts have unanimously found that separate penalties for possession and receipt of child pornography not unconstitutional for vagueness).

20

### III.    Dunning's sentence is reasonable.

A defendant who is convicted of a federal crime must be sentenced in accordance with 18 U.S.C. § 3553.  18 U.S.C. § 3551.  In accordance with § 3553, the district court must consider the Sentencing Guidelines when imposing a sentence.  *United States v. Booker*, 543 U.S. 220, 245-46 (2005).  But judges may impose a different sentence after considering § 3553(a) factors.  *See Kimbrough v. United States*, 552 U.S. 85, 110 (2007).

Generally, this Court reviews the district court's sentencing decision for reasonableness.  *United States v. Richardson*, 437 F.3d 550, 553 (6th Cir. 2006) (citing *Booker*, 543 U.S. at 261).  "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review."  *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46-47 (2007)).  "Review for reasonableness has both procedural and substantive components."  *Id.* (citing *Gall*, 552 U.S. at 49-51).

A district court commits a procedural sentencing error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range."  *United States v. Vowell*, 516 F.3d 503, 509-10 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at

21

51).  "The sentencing judge may not presume that the guidelines range is reasonable, but must consider all of the relevant § 3553(a) factors and impose a sentence that is 'sufficient but not greater than necessary' to comply with the purposes of § 3553(a)(2)."  *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).  "To meet the requirement of procedural reasonableness, the sentencing judge must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'"  *United States v. Klups*, 514 F.3d 532, 537 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).  "[W]hen a sentencing judge independently concurs with the Sentencing Commission's conclusion that a within-Guidelines sentence is appropriate for a given defendant, the explanation for the sentence generally need not be lengthy."  *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007) (citing *Rita*, 551 U.S. at 356-57).

 "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor."  *United States v. Castilla-Lugo*, 699 F.3d 454, 464 (6th Cir. 2012); *see* 18 U.S.C. § 3553(a).  "The applicable Guidelines range represents the starting point for substantive-reasonableness review because it is one of the § 3553(a) factors and because the Guidelines purport to take into consideration

22

most, if not all, of the other § 3553(a) factors." *United States v. Haj-Hamed*, 549 F.3d 1020, 1025 (6th Cir. 2008). In conducting its review, this Court "consider[s] the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination." *Castilla-Lugo*, 699 F.3d at 464-65 (internal quotation marks omitted). The Court must "take into account the totality of the circumstances . . . ." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *Gall*, 552 U.S. at 51). The Court presumes that a within-range sentence is substantively reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (citing *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006)). Thus, "[t]he defendant shoulders the burden of showing substantive unreasonableness." *United States v. Woodard*, 638 F.3d 506, 510 (6th Cir. 2011); *see also United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) ("Because we are entitled to afford a sentence within the advisory Guidelines range a rebuttable presumption of reasonableness, Defendant bears a heavy burden in showing that his sentence at the low-end of his Guidelines range is unreasonable.").

The presentence report enhanced Dunning's base offense level, among other adjustments, under Guidelines § 2G2.2(b)(3)(F) for distributing material involving the sexual exploitation of a minor. [R. 70: Presentence Report at 407 (¶ 29A)); *see id*. at 425.] Dunning objected to the enhancement. [*Id*. at 427.] He claimed

23

that the distribution enhancement was "not valid in this case." [*Id*.] Similarly, he claimed that his base offense level should be reduced two levels because he did not intend to distribute child pornography. [*Id*. at 426-27 (¶ 1); *see id*. at 407 (¶ 28).] During sentencing, he claimed only that his base offense level should be reduced two levels because he did not intend to distribute child pornography. [R. 73: Colloquy, TR (Sentencing) at 442-96.] He did not specifically address the two-level enhancement for distributing child pornography. [*See* R. 73: Colloquy, TR (Sentencing) at 443.] Regardless, the resolution of the issue seemingly resolved his objection to the distribution enhancement under § 2G2.2(b)(3)(F).

### A.    *Dunning's sentence is procedurally reasonable.*

The two-level enhancement for distribution of child pornography pursuant to U.S. Sentencing Guidelines Manual § 2G2.2(b)(3)(F) applies where a defendant's offense conduct "involves . . . distribution," which is defined as

> any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not involve the mere solicitation of such material by a defendant.

U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.1.

Sixth Circuit law is again well-settled on this issue. The function of peer-to-peer file sharing software is to allow users to download files—or portions of

24

files—from other users, while their own files—or portions of those files—are made available to other users of the network. *See Abbring*, 788 F.3d at 567. A defendant who uses such software to download child pornography also necessarily knowingly distributes child pornography, even if he takes steps to limit the ability of others to access his own files. *See id.*; *United States v. Hentzen*, No. 14-6153, 2015 WL 4880150, at *9 (6th Cir. Aug, 7, 2015).

Whether a defendant intended to actually distribute the material is immaterial. *See Conner*, 521 F. App'x at 499-500.  In both *Abbring* and *Hentzen*, the defendants argued that because they moved files out of shared folders as soon as those files were finished downloading, they did not knowingly distribute those files to others.  In both cases, this Court rejected that argument.  As the *Abbring* court opined, that claim is tantamount to saying the defendant "tried to avoid getting caught, not that he never distributed [child pornography]."  *Abbring*, 788 F.3d at 567.

Conversely, the two-point reduction for mere "receipt or solicitation" without intent to "traffic in, or distribute" child pornography, U.S. Sentencing Guidelines Manual § 2G2.2(b)(1), necessarily cannot apply where the two-level distribution enhancement applies.  A person whose actions include knowingly using a peer-to-peer file sharing network to obtain child pornography, which necessarily includes sharing files or portions of files as he downloaded them, goes

25

"beyond mere receipt or solicitation" of child pornography. *Abbring*, 788 F.3d at 568.

Detective Merlo's search warrant affidavit stated that the CPS software logged Dunning's IP as having "been observed with numerous notable files of child sexual exploitation available for sharing." [R. 25: Motion at 80.] Dunning also admitted to using peer-to-peer file sharing software to download and view child pornography. [R. 64: Plea Agreement at 385 (¶ 3(a)).]

In using a peer-to-peer file sharing network, Dunning, like Abbring, "shared child pornography while downloading it and thus transferred images to others. That is all the distribution enhancement requires." *Abbring*, 788 F.3d at 567. That Dunning did not admit to knowledge of how the peer-to-peer software works, *see* Dunning's Brief at 17, is irrelevant. Dunning presented no evidence whatsoever that he was ignorant of how the software functioned or that his files would be shared, and his actions in moving files out of shared folders belie such a claim. [R. 73: Court, TR (Sentencing) at 495-96.] Dunning's knowing use of peer-to-peer file sharing software to download child pornography justifies the distribution enhancement. Because the distribution enhancement applies, the "receipt or solicitation" reduction cannot apply.

Dunning seemingly claims that, for the distribution enhancement to apply, the government must have proved distribution "beyond a reasonable doubt." *See*

26

Dunning's Brief at 17. But he is mistaken. "Sentencing factors are to be determined by a preponderance of the evidence." *United States v. Ross*, 703 F.3d 856, 884 (6th Cir. 2012); *see also Hentzen*, 2015 WL 4880150, at *9 (applying preponderance standard to review of distribution enhancement where defendant found guilty of receipt and possession of child pornography).

Dunning also mistakenly argues that his sentence cannot be enhanced for distribution because the plea agreement does not indicate that he distributed child pornography. *See* Dunning's Brief at 17. The plea agreement merely recommended certain guideline calculations, and the parties specifically agreed that "they may object to or argue in favor of other calculations" and that their recommendations "does not bind the Court." [R. 64: Plea Agreement at 386 (¶ 5).]

### B.    *Dunning's sentence is substantively reasonable.*

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; *see also* U.S. Sentencing Guidelines Manual §§ 1B1.4, 6A1.3(a). Thus, sentencing courts have discretion to "conduct an inquiry broad in scope, largely unlimited either as to the kind of information [they] may consider, or the source from which it may come." *Pepper v. United*

27

*States*, 562 U.S. 476, 489 (2011) (alteration in original) (quoting *United States v. Tucker*, 404 U.S. 443, 446 (1972)).  The information need not be a part of the defendant's crime or even illegal conduct.  *Cunningham*, 669 F.3d at 735.

Dunning's guideline range was 151 to 188 months.  [R. 73:  Court, TR (Sentencing) at 498.]  After an extended colloquy with counsel regarding the seriousness of the offenses, the 18 U.S.C. § 3553 factors, and the current disputes among Congress and the judiciary with regard to sentencing issues in child pornography cases, the district court sentenced Dunning to 165 months of incarceration.  [R. 73:  Colloquy, TR (Sentencing) at 525-67.]  As part of that discussion, Judge Reeves drew the parties' attention to the *Butner Study*,[2] which he described as indicating "that among individuals who were convicted federally of trafficking or possessing child pornography, there's a high incidence of previously undisclosed contact offenses versus children."  [R. 73:  Court, TR (Sentencing) at 527-28, 559.]  Conversely, Judge Reeves also considered the testimony of Dunning's character witnesses, stating on the record that "[t]he defendant does have some positive characteristics.  They have been presented here today through

_____

[2] Michael L. Bourke & Andres E. Hernandez*, The "Butner Study" Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, 24 J. Fam. Violence 183 (2009).

28

various witnesses and also through some information that is contained in the sentencing memorandum." [*Id*. at 563.]

Dunning's argument that the district court's citation of the *Butner Study* somehow invalidates his sentence has no merit. In context, the district court's consideration of the *Butner Study* as one of a myriad of factors cannot be viewed as improper or prejudicial to Dunning. Dunning's sentence in the middle of the guideline range is the product of an individualized determination that sufficiently incorporates any mitigating information. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *Tristan-Madrigal*, 601 F.3d 632-33. The question is not whether the district court "could" have given a lower sentence, but rather whether the court "must" have done so. *United States v. Smith*, 516 F.3d 473, 478 (6th Cir. 2008). And Dunning has failed to show that the court must have given him a lower sentence.

## CONCLUSION

The district court's denial of Dunning's motion to suppress, as well as

Dunning's sentence, should be affirmed.

<div style="margin-left: 40%;">

Respectfully submitted,

KERRY B. HARVEY
UNITED STATES ATTORNEY

CHARLES P. WISDOM JR.
APPELLATE CHIEF

</div>

By:   s/ Daniel E. Hancock
      Assistant United States Attorney
      260 W. Vine Street, Suite 300
      Lexington, Kentucky 40507-1612
      (859) 685-4829
      Daniel.Hancock@usdoj.gov

## CERTIFICATE OF SERVICE

On June 21, 2016, I electronically filed this brief through the ECF system,

which will send the notice of docket activity to:

Stephen W. Owen
*Attorney for Bret A. Dunning*

s/ Daniel E. Hancock
Assistant United States Attorney

**APPELLEE'S DESIGNATION OF DISTRICT COURT DOCUMENTS**

| Record Entry | Description of Document | Page ID# |
|---|---|---|
| 1 | Indictment | 1-5 |
| 21 | Request | 51-54 |
| 25 | Motion | 64-173 |
| 26 | Order | 174-77 |
| 27 | Motion | 178-81 |
| 33 | Reply | 207-16 |
| 37 | Supplement | 229-31 |
| 40 | Report and Recommendation | 245-52 |
| 41 | Order | 253-54 |
| 45 | Objections | 265-68 |
| 46 | Opinion and Order | 269-77 |
| 55 | Minute Entry | 307-08 |
| 60 | Sentencing Memorandum | 326-75 |
| 64 | Plea Agreement | 384-89 |
| 68 | Judgment | 393-99 |
| 69 | Notice of Appeal | 400 |
| 70 | Presentence Report | 401-28 |
| 73 | Sentencing Transcript | 440-583 |